RALPH ROMAINE and JOHN KIP *v.* MARY ANN NORRIS.

### CERTIORARI.

1. In an action of trespass for the illegal taking of goods by way of distress, after the trespass is proved, evidence may be admitted to shew the

Romaine and Kip *v.* Norris.

attendant circumstances in order to guide the Court in the assessment of damages.

2. Although the whole evidence may be contained in the state of the case brought up to this Court, yet the Court will only examine for the purpose of settling questions of law and will not decide upon questions of fact.

3. Whether a motion for a non-suit shall be heard after the regular time (the close of the plaintiff's evidence) is a matter for the discretion of the Court under the circumstances of the case.

4. Although the amount of costs for which the justice rendered judgment was erroneous, and the Common Pleas on the appeal, awarded a smaller sum; yet the appellee may be entitled to costs in the Court of Common Pleas.

This was a certiorari to the Court of Common Pleas of the county of Bergen, to bring up the judgment and proceedings of that Court on an appeal from the Court for the trial of Small Causes, and was argued by

*Halsey,* for the plaintiffs in certiorari, and

*W. Miller,* for the defendant.

The material facts in the case are sufficiently developed in the opinion of the Court, which was delivered by

EWING, C. J. The first reason urged for the reversal of the judgment, is that on the trial of the appeal, the Common Pleas admitted illegal evidence.

Norris sued Romaine and Kip in trespass, for the illegal taking of her goods by way of distress for rent, before any rent had become due. In the state of the case, it appears from the testimony of the first witness examined on the part of the appellee, Norris, that in March, 1823, she rented from Romaine, part of an house at Paterson, from the 1st of May, 1823, for one year, at $120, payable quarterly— that the house was not then finished, but Romaine contracted that it should be finished and a bed-room made in the garret one week before the 1st of May; on that day

7

Norris removed from New York to the house, under the agreement she had made with Romaine. It farther appeared in evidence, that on the 16th of June, 1823, and of course before three months had elapsed, she left the house and took her goods to Acquackanunck landing, and was there about to put them on board a vessel for New York, when the trespass complained of took place. Having given evidence of the taking of the goods and the avowed purpose for which they were taken, the appellee, Norris, then offered, and after objection made was admitted, to prove, " that Romaine had not finished the house according to his contract—that the house was not comfortable nor fit to be occupied—that there was no bedroom in the house—that the garret, in which the bed-room was to be finished by Romaine, was connected with the garret of another house in which men slept—that she slept part of the time in the kitchen, which was only partially finished and part of the time in the store-room— that after she moved into the house she frequently requested Romaine to finish the bed-room in the garret for that she could not live so, and he always promised to do it next week but never did." And this is the evidence said to have been unlawfully admitted.

The illegal taking of the goods, the trespass charged in the state of demand, having been proved, and that the defendants had committed a trespass was not controverted at the bar, it was certainly material to ascertain the attendant circumstances in order to guide the court in the assessment of damages. Was the taking wanton and malicious ? Was it done under a mistaken belief of right ? These surely were legitimate subjects of inquiry. The amount of damages in trespass is not necessarily limited to the mere value of the chattel taken or destroyed. If I am on a journey and a man kills my horse, whereby my progress is delayed and my purpose defeated, is my remuneration limited by the actual value of the animal, the loss of which is perhaps the least part of the injury I have sustained ?

Romaine and Kip *v.* Norris.

Upon the same principles the cause which induced her removal was a fair source of information. For if without cause she deserted the premises on the approach of quarter-day and to defraud her landlord of his rent, she would surely present a different claim for damages, than if, having submitted to a broken contract and repeated disappointments until, without hope of fulfilment, she was compelled to leave an house not comfortable, and not fit for a female to live in because not finished according to contract. The purpose of the testimony was not to sustain a recovery for a breach of the contract—no such claim was made in the state of demand—no such claim could have been legally made on the trial. It was to shew the character of her removal— and in this view, in my opinion, was competent and admissible.

The second reason for reversal is, that Norris waived the trespass, assented to the distress and satisfied the demand of the landlord.

Whether she waived the trespass, whether she assented to the distress, whether she paid the money and pledged the sideboard by way of compromise and adjustment, as was insisted by the counsel of the plaintiffs in certiorari, or to relieve her property from distress, relying on her legal remedy, as was contended by her counsel, were questions of fact, very proper to be examined by the court below, but into which we, sitting here as a court of error, cannot enter ; and although the whole evidence heard on the trial may be contained in the state of the case brought here, yet it is presented to us to examine questions of law only, not of fact.

The same considerations are a conclusive answer to the third reason assigned for the reversal of the judgment, the alleged excessiveness of the damages. That matter cannot legally become the subject of investigation or inquiry here.

After the evidence on both sides had been given, the plaintiffs in certiorari proposed to move for a non-suit, which the court refused to hear, and this refusal is the fourth reason assigned for reversal.

When the evidence of the plaintiff is closed, the defendant is entitled to be heard, to shew that the evidence is insufficient to maintain the action and that a non-suit should be ordered; such a motion is sometimes made at a later period in the progress of the cause. But whether it shall be heard after the regular time, the close of the plaintiff's evidence, is a matter of discretion in the court under the circumstances of the case. It is a well settled rule that error does not lie upon subjects of discretion. It has been so held in several cases in the Supreme Court of the United States. *Woods and Bemis* v. *Young,* 4 *Cranch.* 237; *Henderson* v. *Moore,* 5 *Cranch.* 11; *Mandeville and Jameson* v. *Wilson, ibid.* 15; *Moss* v. *Riddle, ibid.* 358; *The Marine Insurance Company of Alexandria* v. *Hodgson,* 6 *Cranch.* 206.

The fifth reason relates to the costs. The judgment of the justice was for $83 damages and $3.77 costs. The judgment of the Common Pleas was for $100 of damages and $2.32½ costs before the justice, with costs in the Common Pleas taxed at $11.64.

*First*—It is insisted that the amount of costs for which the justice rendered judgment being erroneous, the Common Pleas having allowed a smaller sum, no costs in the Common Pleas should have been adjudged to the appellee, and it is said and without doubt truly, that a party may appeal if aggrieved in the amount of costs for which judgment is rendered against him in the court for the trial of small causes.

Inasmuch, however, as by the determination of the Common Pleas it appears the plaintiff before the justice was entitled to judgment there and therefore to recover costs; inasmuch as if the appeal had been only against the costs, the attendance of witnesses, and other costs incident to a trial on the merits would have been avoided, but the appeal being against the judgment for damages, these costs in the Common Pleas were necessarily incurred; inasmuch as it does not appear from any part of the proceedings that the appeal was even partially made on account of error in the

costs, but on the contrary it appears from the state of the case that no question on this head was raised in the Common Pleas; the costs in the Common Pleas were properly allowed, notwithstanding the reduction of the amount of costs before the justice.

In the *second* place, it is said the amount of costs taxed and allowed in the Common Pleas is extravagant. But, the particulars of the bill of costs are not presented to us. We cannot enter into speculations or conjectures of what they are; we are bound to presume the amount legal unless the contrary is manifested, especially as it is within a very reasonable compass, for there were two witnesses examined for the appellee and if they attended from another county at a distance of 75 miles, and there is nothing in the transcript or the state of the case to shew that they did not, their legal fees would have exceeded the amount adjudged.

Let the judgment be affirmed.